UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

MICHAEL J. GERARD,

        Appellant,

        v.                                                Case No.  13-C-0114

KEVIN P. GERARD,
MARGARET M. GERARD,

        Appellees.

---

ORDER AFFIRMING BANKRUPTCY COURT
AND DISMISSING APPEAL

This appeal arises from an adversary proceeding in which Kevin and Margaret Gerard sought to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(6) that Michael Gerard, the debtor, owed Kevin and Margaret Gerard pursuant to a state court judgment.[1] The underlying dispute dates back to 2007 when Michael submitted an offer to purchase a lot on Lake Michigan in the Town of Grafton. He turned to his brother and sister-law, Kevin and Margaret, for assistance with the financing. Afterward, Kevin and Margaret purchased the property. Circumstances changed and Kevin began to search for another buyer. In 2009, Kevin learned that Michael had filed a Memorandum of Interest with the Ozaukee County Register of Deeds in September of 2008 claiming "an equitable and beneficial interest" in the property. Unable to sell the property, Kevin and Margaret filed suit in Ozaukee Count Circuit Court against Michael alleging breach of contract, slander of title and seeking a declaration of interest/quiet title and partition. A jury awarded

---

[1] For the sake of clarity, the court will omit the last names of the parties throughout the brief. Hereinafter, the parties shall be referred to as Kevin, Margaret and Michael.

Kevin and Margaret damages of $281,000, which included a $1,000 statutory award of punitive damages. After Michael filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, Kevin and Margaret filed an adversary proceeding to determine nondischargeability of the debt pursuant to 11 U.S.C. § 523(a)(6). Case No. 12-21108-svk; Case No. 12-02291-svk. Judge Kelley granted Kevin and Margaret's summary judgment motion finding that $281,000 judgment was the result of "willful and malicious injury" by Michael and, therefore, nondischargeable under 11 U.S.C. § 523(a)(6).

This court has jurisdiction over Michael's appeal pursuant to 28 U.S.C. § 158(a)(1) and reviews the bankruptcy court's grant of summary judgment de novo. *Dick v. Conseco, Inc.*, 458 F.3d 573, 577 (7th Cir. 2006). Federal Rule of Bankruptcy Procedure 7056 provides that "Rule 56 F. R. Civ. P. applies in adversary proceedings...." Fed. R. Bankr. P. 7056(a). And under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "If a party moving for summary judgment has properly supported his motion, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013) (internal quotation omitted). On the other hand, the court's ruling regarding discovery is reviewed for abuse of discretion. *In re Salem*, 465 F.3d 767, 777-778 (7th Cir. 2006).

In addition to the citations to the record from the adversary proceeding, the following findings of fact were submitted by the parties on summary judgment and are undisputed. Notably, with the exception of paragraphs 14 and 24 of Kevin and Margaret's proposed

2

findings of fact, Michael did not dispute the proposed findings of fact. As to those paragraphs, the court extracted its findings from the underlying source document.[2]

Kevin and Margaret are married, and Michael is Kevin's brother. (R. 1-1 at 111-117, PFOF ¶¶ 5, 6.) Michael received a law degree from Northern Illinois University and is a licensed medical doctor. (*Id*. at PFOF ¶ 7.)

In 2007, Michael was looking to purchase lakefront property to build a home. Michael had financing issues, and Kevin and Margaret agreed to help him with the financing. Ultimately, Kevin and Margaret purchased a lakefront lot in the Town of Grafton, Ozaukee County, with an agreement that Michael would make payments and ultimately buy the lot from Kevin and Margaret. (*Id.* at PFOF ¶ 8.) Disputes arose thereafter, and in 2008 Kevin and Margaret decided to sell the lot, informed Michael of their plan, and put up a "For Sale by Owner" sign. (*Id.* at PFOF ¶ 9.) On at least two occasions, Michael went to the property and destroyed the "For Sale" sign. (*Id.* at PFOF ¶ 10.)

On September 26, 2008, Michael had his attorney, Robert A. Carroll, record a Memorandum of Interest in Real Estate with the Ozaukee County Register of Deeds against the lot. (*Id.* at PFOF ¶ 11.) The Memorandum of Interest stated as follows:

> Please take notice that by reason of a certain written contract dated October 12, 2007, between the undersigned MICHAEL JAMES GERARD, party of the first part, and KEVIN P. GERARD and MARGARET M. GERARD, husband and wife, parties of the second part (the "Contract"), on the 16th day of November, 2007, the undersigned party of the first part acquired an equitable

---

[2] Complicating this court's review was the fact that the record from the bankruptcy court was scanned upside down and out of sequence. The court reviewed each page in the record and asked the bankruptcy court to correct the upside down filings. Ordinarily the court would cite to the pagination of the original document as required by The Bluebook. However, the record in this case makes finding a document by that page number extremely difficult. For consistency in issuing this decision, the court has used the page number at the bottom of the page that was generated when the record was created. Hence, page 1 of the jury trial transcript is actually R. 1-2 at 105.

3

and beneficial interest in the following property (the "Property"), in Ozaukee County, Wisconsin:

[Description of Property]

A copy of the pertinent portion of the contract is attached hereto as Exhibit A. Copies of the underlying Residential Offer to Purchase, Counter-Offers 1&2, and Amendment(s) referred to in the Contract that were originally signed by party of the first part, but which were assigned to parties of the second part pursuant to the Contract are not attached hereto. By virtue of the Contract and pursuant to all terms, conditions and provisions of it, when title to the Property was conveyed to parties of the second part by a certain Warranty Deed, dated November 16, 2007 and recorded in the office of the Register of Deeds of Ozaukee County, Wisconsin on November 27, 2007 as Document No. 0873933, parties of the second part have acquired title for convenience only and hold title for the benefit of party of the first part.

(R. 1-1 at 42.) Michael signed the Memorandum of Interest.

On October 23, 2009, Kevin and Margaret commenced an action against Michael in the Ozaukee County Circuit Court, Case No. 95-C-865. An amended complaint was filed July 23, 2010. (*Id.* at PFOF ¶ 12.) Kevin and Margaret alleged declaration of interest/quiet title, slander of title, partition, and breach of contract. (*Id.* at PFOF ¶ 13; R. 1-1 at 20.) Specifically, paragraph 39 of the amended complaint alleged that Michael "knew or should have known that the contents of the Notice of Equity Interest are false, a sham or frivolous." (R. 1-1 at 19.) In addition, the partition claim alleged that Kevin and Margaret had a 94.73% interest in the lot whereas Michael had a 5.27% interest in the lot. (R. 1-1 at 20.) The "Wherefore" Clause sought punitive damages in the amount of $1,000 and actual damages regarding the second cause of action for slander of title. (R. 1-1 at 21.)

Michael answered the Ozaukee County amended complaint, asserting eight affirmative defenses and five counterclaims. (R. 1-1 at 111-117, PFOF ¶ 15.) He initially

4

appeared by counsel, but, on August 20, 2010, counsel withdrew and Michael proceeded pro se. (*Id.* at PFOF ¶ 16.) Michael participated in all aspects of the pretrial proceedings, including discovery, court conferences and hearings, and presented and opposed motions. (*Id.* at 17.)

During the course of the Ozaukee County action, Kevin and Margaret filed a motion for summary judgment to dismiss Michael's counterclaims. The court granted the motion before sua sponte reversing and setting the matter for a jury trial. (*Id.* at 18.) On October 3-4, 2011, the case was tried to a twelve-person jury with Judge Sandy Williams presiding. Michael fully participated in the trial, made an opening statement and closing argument, presented evidence and cross-examined witnesses. He submitted his own proposed verdict form and jury instructions, and was involved in the jury instruction conference at which time the special verdict form and the jury instructions were determined by the court. (*Id.* at 19.)

During the trial, Michael testified that it was his theory that Kevin secretly wanted to live on the property someday and that Kevin brought the lawsuit to clear the title. On cross-examination, Michael explained that Kevin perceived this as a "game."

    Q    In your view this is all purely a game?

    A    Yeah. Because there's a lien on it so he knows no matter how much he drops the price, no one's going to put in an offer as long as there's a lien on it. So he can lower the price and make it look like he's trying to sell the property, but he knows no one's going to put an offer as long as the title is clouded so you can't really give it much weight.

    Q    And that's because you slapped this on the title, right?

    A    Yeah. That's right.

5

(Id. at PFOF ¶ 20; Doc. 1-2 at 559.)

The court instructed the jury on the slander of title claim as follows:

Question Nos. 1 through 8 fo the Special Verdict Form ask you to decide whether Defendant violated § 706.13(1) of the Wisconsin Statutes. Section 706.13(1) sets forth standards for a slander of title action and states:

Any person who submits for ... recording, any lien, claim of lien, ... or any other instrument relating to a security interest in or the title to real or personal property, and who knows or should have known that the contents or any part of the contents of the instrument are false, a sham or frivolous, is liable in tort to any person interested in the property whose title is thereby impaired, for punitive damages of $1,000 plus any actual damages caused by the filing, entering or record.

....

If Michael Gerard knew, or should have known, that any part of the Memorandum of Interest in Real Estate, including any party of its Exhibit A, was false, a sham, or frivolous, he is liable to Plaintiffs. If a preponderance of the evidence establishes any part of the Memorandum is false, a sham, or frivolous and Micael Gerard was aware or should have been aware, of it at the time he caused the recording of the Memorandum, you should answer "Yes" to Question No. 2 of the Special Verdict Form. If you are not so satisfied, you should answer "No" to Question No. 2.

Under certain circumstances, a person may have a conditional privilege to publish statements concerning a title to real estate. However, the privilege does not protect a person if it is abused. For the conditional privilege defense to a slander of title claim to apply, Michael Gerard must have had a reasonable ground for believing the truth of the contents of the memorandum, and the contents of the memorandum must have been reasonably calculated to accomplish a privilege purpose. In this case Michael Gerard claims the contents of the memorandum are conditionally privileged because he claims an interest in Lot 3 to protect. An abuse of Michael Gerard's privilege occurred if he at the time of the filing the memorandum or any time thereafter knew that any of the contents were false or filed the memorandum in reckless disregard as to the truth or falsity of the contents of the memorandum.

(R. 1-2 at 27-28.)

The jury returned the following special verdict in favor of Kevin and Margaret:

A.  Slander of Title

1. Did Michael Gerard cause the recording of the Memorandum of Interest in Real Estate against Lot 3 with the Ozaukee County Register of Deeds Office (hereinafter "Memorandum")?
   ANSWER (Yes or No):   Yes

2. Answer this question only if you answered "Yes" to Question No. 1: Did Michael Gerard know, or should he have known, the contents, or a part of the contents, of the Memorandum were false, a sham, or frivolous?
   ANSWER (Yes or No):   Yes

3. Answer this question only if you answered "yes" to Question No. 2: Did Michael Gerard have a reasonable ground for believing the truth of all of the contents of the memorandum?
   ANSWER (Yes or No):   No

4. Answer this question only if you answered "Yes" to Question No. 3: Were all of the contents of the memorandum reasonably calculated by Michael Gerard to accomplish a privileged purpose?
   ANSWER (Yes or No):   _____

5. Answer this question only if you answered "yes" to Question No. 4: At any time, did Michael Gerard abuse the privilege when he filed and maintained the filing of the memorandum?
   ANSWER (Yes or No):   _____

6. Answer this question only if you answered "Yes" to Question No. 2: Is it a practical possibility for Kevin Gerard and Margaret Gerard to show specific losses from individual potential purchasers?
   ANSWER (Yes or No):   No

7. Answer this question only if you answered "No" to Question No. 6: Were Kevin Gerard and Margaret Gerard deprived of a market which would have been available to them if the Memorandum had not been recorded?
   ANSWER (Yes or No):   Yes

8. Answer this question only if you answered "YES" to Question No. 2: Did Kevin Gerard and Margaret Gerard show specific losses from individual potential purchasers?
   ANSWER (Yes or No):   Yes

B. Breach of Contract

9. Did Kevin Gerard and Margaret Gerard have an agreement with Michael Gerard?
   ANSWER (Yes or No):   Yes

7

10. Answer this question only if you answered "Yes" to Question No. 9: Did Michael Gerard breach his agreement with Kevin Gerard and Margaret Gerard regarding his reimbursement of all of Plaintiffs' out-of-pocket costs?
    ANSWER (Yes or No):    Yes

11. Answer this question only if you answered "Yes" to Question No. 9: Did Michael Gerard breach his agreement with Kevin Gerard and Margaret Gerard regarding purchasing Lot 3 from Plaintiff?
    ANSWER (Yes or No):    Yes

12. Answer this question only if you answered "Yes" to Question No. 9: Did Michael Gerard breach his duty of good faith and fair dealing to Kevin Gerard and Margaret Gerard?
    ANSWER (Yes or No):    Yes

13. Answer this question only if you answered "Yes" to Question No. 10, Question No. 11, or Question No. 12: Did Michael Gerard's breach of contract cause damage to Kevin Gerard and Margaret Gerard?
    ANSWER (Yes or No):    Yes

C.  Damages

14. Answer this question regardless of how you answered the previous questions: What is the amount of Kevin and Margaret Gerard's out-of-pocket expenses including without limitation, down payment, holding costs and costs of refinancing?
    ANSWER:    $215,224.86

15. Answer this question regardless of how you answered the previous questions: What was the difference in the value of Lot 3 in September of 2008 versus the time of Trial?
    ANSWER:    $ No Change

16. Answer this question regardless of how you answered the previous questions: What is the amount of damages suffered by Kevin and Margaret Gerard:
    ANSWER:    $280,000

(R. 1-1 at 39-42.)

Michael continued to participate in the Ozaukee County action by filing a motion to set aside verdict and order new trial and motion for judgment notwithstanding the verdict. (Doc. 1-2 at 34-65.) Simultaneously, Kevin and Margaret argued the entire $280,000

8

awarded by the jury was not divisible between the two claims and was recoverable as damages for the slander of title claim. The trial court granted Kevin and Margaret's motion for entry of judgment and entered an order for judgment applicable to both claims. (Id. at PFOF ¶ 24.) In addition, the court denied Michael's motions to set aside verdict and order a new trial, for judgment notwithstanding the verdict, for leave to amend pleadings, and for stay of enforcement of judgment pending appeal. (R. 1-2 at 128-129.)

The order stated that Kevin and Margaret Gerard are awarded "$281,000, plus costs and disbursements allowed by §§ 814.01 and 814.04, Wis. Stats., to be determined by the clerk pursuant to § 814.10, Wis. Stats. An interlocutory Judgment may be entered forthwith pursuant to § 806.01(2), Wis. Stats." (R. 1-2 at 129.) The court indicated that it would decide plaintiffs' request for an award of attorney's fees "incurred in clearing the disparaged title" in a hearing on January 20, 2012, and that "this is not a final order for purposes of appeal, in light of the further proceedings required under paragraph 6." (R. 1-2 at 129.)

An interlocutory judgment was entered on December 9, 2011, consistent with the order for judgment. (R. 1-2 at 130.) The hearing to determine whether Kevin and Margaret were entitled to an additional award of attorney's fees caused by the slander of title was stayed once Michael filed a Chapter 11 proceeding. (*Id.* at PFOF ¶ 25.) Kevin and Margaret filed the adversary proceeding on April 30, 2012, to determine whether Michael's debt is nondischargeable under § 523(a)(6) of the Bankruptcy Code.

In the adversary proceeding, Michael served a discovery request on Kevin and Margaret and deposition subpoenas on representatives of TCF Bank. (Doc. 1-2 at 60-64, 85-87.) Michael's stated purpose of the discovery was to "ascertain whether Kevin

9

committed perjury in the Ozaukee Action when he testified that a representative of TCF Bank orally informed him that the bank was no longer willing to finance the purchase of the Grafton lot." (*Id.* at 189-90.)

Kevin and Margaret moved to quash the depositions and for a protective order suspending factual discovery pending the court's ruling on the pending motion for summary judgment. (Doc. 1-1 at 53.) The bankruptcy court conducted a hearing on July 20, 2012, and revised the summary judgment briefing schedule. (Doc. 1-1 at 90.) In addition, the bankruptcy court barred discovery pending the outcome of the September 25, 2012, summary judgment hearing. The court added as follows:

> This ruling does not preclude the Debtor from pursuing post-judgment remedies available to him in the Ozaukee County Circuit Court. The Debtor would not be required to file a Motion for Relief from Stay to pursue such remedies, and Kevin Gerard would not be required to file a Motion for Relief from Stay to respond to and defend any such actions taken by the Debtor.

(R. 1-1 at 91.)

In opposition to summary judgment, Michael argued that the jury was not asked to determine the required elements of a claim under § 523(a)(6), and that there were issues of fact with respect to (1) the apportionment of damages between the breach of contract and slander of title claim and (2) whether the Ozaukee Action was procured by perjured testimony from Kevin.

On November 15, 2013, the bankruptcy court issued a written decision granting Kevin and Margaret's summary judgment motion. On the issue of preclusion, the court found no dispute that the Ozaukee County action was final and that the parties were identical. Acknowledging that neither the amended complaint nor the special verdict used the terms willful or malicious, the court reasoned that labels are not a prerequisite for the

10

application of collateral estoppel. Ultimately, the court found that the Ozaukee County jury made findings that satisfied the required elements.

In reaching this decision, the court reviewed "the entire trial transcript, jury instructions, Special Verdict, post-trial Motions, and orders and judgments entered by the Ozaukee County Circuit Court." The court found that the answer to special verdict question 1 showed that Michael committed an intentional act by recording the Memorandum. The jury's Yes answer to questions 2 and 7 had to be considered in the context of the jury instructions and Wisconsin's slander of title statute. After considering the conflicting testimony by Michael and Kevin, the court concluded that the jury considered Michael's knowledge and intent in recording the Memorandum of Interest in Real Estate with the Ozaukee County Register of Deeds. The answer to question 2 confirmed that Michael intended to cause injury by knowingly filing a "false, sham or frivolous" document in violation of Wisconsin law and the answer to question 7 demonstrated that the Michael's "calculated act was a direct and material cause of Kevin and Margaret's injury." In addition, by answering no to question 3, the jury rejected Micahel's claim of privilege -- that he filed the Memorandum of Interest to protect his ownership interest or innocent third parties.

Citing the transcript and post-trial motions, the bankruptcy court also rejected Michael's argument that the jury could have found him liable for slander of title if an immaterial portion of the Memorandum of Interest was found to be false, a sham or frivolous. The court granted Kevin and Margaret's motion for summary judgment finding that the Ozaukee County Circuit Court's determination that the jury's damage award was indivisible and that the state court's judgment must be recognized. Finally, on the issue

11

of perjured testimony, the bankruptcy court ruled that "unless and until the Ozaukee County Circuit court or a Wisconsin appellate court accepts Michael's arguments about the alleged perjured testimony, those arguments do not create a disputed issue of fact" in federal court.

On appeal, Michael identified the following issues pursuant to B.R. 8006: (1) whether the bankruptcy court erred in granting summary judgment to Kevin and Margaret on the grounds of issue preclusion; (2) whether the bankruptcy court properly applied Wisconsin issue preclusion law; (3) whether the bankruptcy court erred in ruling that the materiality of the factual contention that the state court jury verdict was procured by perjured testimony by Kevin Gerard depends on whether the contention is first accepted by the Circuit Court of Ozaukee County or a Wisconsin appellate court; (4) whether the bankruptcy court abused its discretion in prohibiting discovery on the factual issue of whether the state court jury verdict was procured with perjured testimony by Kevin Gerard. In his brief, Michael reframes issues (1) and (3) as whether the special verdict rendered in Ozaukee County Circuit Court Case No. 2009CV00865 sets forth sufficient findings of fact to establish a prima facie claim under 11 U.S.C. § 523(a)(6) and whether any issues of material fact existed that rendered summary judgment improper.

Whether the bankruptcy court erred in granting summary judgment or misapplied Wisconsin preclusion law is subject to de novo review. Michael Gerard first argues that the jury's findings in the Ozaukee County Circuit Court case were insufficient to establish a prima face claim for relief under § 523(a)(6) inasmuch as the jury did not determine whether he had no legal justification for his actions or that he acted with intent to cause injury to Kevin and Margaret.

Section 523(a)(6) excepts from discharge any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. 11 U.S.C. § 523(a)(6). Kevin and Margaret had the burden of proving their claim under § 523(a)(6) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). To this end, Kevin and Margaret maintain that the court must recognize the preclusive effect of the Ozaukee Circuit Court judgment pursuant to the Full Faith and Credit Act. *See Dollie's Playhouse, Inc. v. Nable Excavating, Inc.*, 481 F.3d 998, 1000 (7th Cir. 2007). Under 28 U.S.C. § 1738, state court proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken."

The state court judgment's preclusive effect is decided in accordance with state law. 28 U.S.C. § 1738; *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 136 F.3d 1134, 1136 (7th Cir. 1998). Collateral estoppel, or issue preclusion, prevents the relitigation of an issue previously decided in a judicial proceeding as long as the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding. *Allen v. McCurry*, 449 U.S. 90, 94–95, 101 S. Ct. 411, 414–415, 66 L. Ed. 2d 308 (1980). In Wisconsin, a state court judgment's preclusive effect is determined by whether issue preclusion can, as a matter of law, be applied and whether the application of issue preclusion would be fundamentally fair. *Michelle T. by Sumpter v. Crozier*, 173 Wis. 2d 681, 698, 495 N.W. 2d 327 (Wis.1993).

First, the court considers whether "the issue ... was actually litigated and determined in the prior proceeding by a valid judgment in a previous action and whether the

determination was essential to the judgment." *Landess v. Schmidt,* 115 Wis. 2d 186, 197, 340 N.W.2d 213, 219 (Ct. App.1983) (citing Restatement (Second) of Judgments § 27 (1982)). Next, the court considers whether issue preclusion comports with principles of fundamental fairness. This is generally a discretionary decision, although some of the factors a court is to consider in determining fairness present a question of law. *Paige K.B. ex rel. Peterson v. Steven G.B.*, 226 Wis. 2d 210, 225, 594 N.W.2d 370 (1999). The factors that courts may consider when undertaking the second step of issue preclusion are: "(1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?" *Michelle T. By Sumpter*, 173 Wis. 2d at 689.

Step one requires that the issue – willful and malicious injury to the property of another – was actually litigated and determined by the Ozaukee judgment and whether the determination was essential to the judgment. *See* 11 U.S.C. § 523(a)(6). The United States Supreme Court has clarified that "nondischargeability takes a deliberate or intentional injury" and "not merely an intentional or deliberate act that leads to an injury."

14

*Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998). Injuries caused by intentional torts generally fall within the definition of "willful" because those torts usually require that the actor "intend the consequences" of his or her acts. *Id.* (Congress sought to limit § 523(a)(6) to only "willful and malicious" injuries that were intentionally caused). However, while most intentional torts fall within § 523(a)(6), some do not. *See Garoutte v. Damax*, 400 B.R. 208, 213 (Bankr. S.D. Ind. 2009)(denying summary judgment where the Indiana Court of Appeals suggested that the debtor had an excuse for the criminal conversion indicating it may not have been intentional or malicious.) Further, malice has been defined as the "conscious disregard of one's duties or without just cause or excuse." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994). It does not require proof of ill-will or a specific intent to harm. *Id.*

As the Seventh Circuit acknowledged, "in the course of our research we have discovered to our surprise that courts are all over the lot in defining this phrase in section 523(a)(6)." *Jendusa–Nicolai v. Larsen*, 677 F.3d 320, 323 (7th Cir. 2012). Nevertheless, the court concluded that "... whatever the semantic confusion, we imagine that all courts would agree that a willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury, or knowing it was highly likely to result from his act." *Id.*, 677 F.3d at 324.

The Ozaukee County case went to the jury on an intentional tort – slander of title. As the jury was instructed, Wisconsin's slander of title law provides:

> any person who submits for filing, entering in the judgment and lien docket or recording, any lien, claim of lien, lis pendens, writ of attachment, financing

15

statement or any other instrument relating to a security interest in or the title to real or personal property, and who knows or should have known that the contents or any part of the contents of the instrument are false, a sham or frivolous, is liable in tort to any person interested in the property whose title is thereby impaired, for punitive damages of $1,000 plus any actual damages caused by the filing, entering or recording.

Wis. Stat. § 706.13(1). As such, the elements of statutory slander of title are "[a] knowingly false, sham or frivolous claim of lien ... filed, documented or recorded which impairs title...." *Kensington Dev. Corp. v. Israel*, 142 Wis. 2d 894, 902-903, 419 N.W.2d 241 (1988).

Michael is correct when he points out that the jury was not instructed on the words "willful" and "malicious." Moreover, the jury was not specifically asked whether Michael intended to cause injury. Nevertheless, these labels are not a prerequisite to apply collateral estoppel. *See Ball v. A.O. Smith Corp.*, 451 F.3d 66, 70-71 (2d Cir. 2006). Preclusion applies if the findings in the Ozaukee County action establish that Michael's actions were willful and malicious.

In support of summary judgment, Michael filed a declaration asserting his belief that he had an equitable ownership interest in the Grafton lot. However, his declaration cannot create a genuine issue of material fact if it conflicts with the jury's findings. The purpose of preclusion is to prevent revisiting the issues that the jury has considered and decided. To this end, the jury was presented with two competing theories regarding the facts.

Kevin testified and presented evidence that the Agreement attached to the Memorandum of Interest drafted by his father in response to a request from TCF Bank that they provide a "business model." (R. 1-2 at 277.) However, nothing was done with that Agreement because Kevin received a call from TCF Bank that it was "not interested in doing the financing." (*Id.* at 280.) Kevin testified that he threw the Agreement away

16

because it no longer served a purpose as Michael was not getting the money to pay back Kevin for a down payment. (*Id.* at 281.) When shown the Memorandum of Interest and the Agreement at trial, Kevin testified that the Agreement was not a contract to be enforced and related solely to the request by TCF. (*Id.* at 317.)

Kevin purchased the lot but it soon became apparent that Michael's fiancé, who was pregnant, did not want to live in Grafton. (*Id.* at 298.) Kevin made the decision to sell after the mortgage was coming due and Michael was not proceeding with a construction loan. (*Id.* at 299, 305.) Kevin testified that he told Michael about his decision to sell, and that Michael removed the "For Sale" signs and never told Kevin that he filed the Memorandum of Interest on the property. (*Id.* at 315-316.)

In contrast, Michael testified that the problem was Kevin and Margaret's failure to apply for construction financing or a line of credit, and that he filed the Memorandum of Interest to protect his equity interest in the property. (*Id.* at 513-525.) He also testified that no matter how much Kevin reduced the price, no one would make an offer because the title was clouded. According to Michael, the whole purpose of the lien was to show that someone else has an interest in the lot. Throughout the trial, his defense was that he was simply protecting his interest and this defense was reflected in the jury instructions. (R. 1-3 at 89.1) ("In this case Michael Gerard claims the contents of the memorandum are conditionally privileged because he claims an interest in Lot 3 to protect.") Yet he conceded that he physically took down the "For Sale" sign. (*Id.* at 525.)

In that context, the jury considered the conflicting testimony and rejected the theory that Michael had a reasonable ground to believe the truth of the contents of the

17

Memorandum of Interest. The jury's answers to questions 1, 2 and 3 establish that Michael acted intentionally in recording the Memorandum of Interest and "knew or should have known that contents or part of the contents were false, a sham, or frivolous." The jury also found that Michael deprived Kevin and Margaret of a market that would have otherwise been available to them if the Memorandum had not been recorded. According to the instructions, the jury was to answer yes if the recording was a material cause of Kevin and Margaret's being deprived of the market. Moreover, the jury heard Michael, a doctor and a lawyer, testify that it was "all purely a game" because no matter how much the price is dropped no one would put an offer on the property as long as there is a lien on it. (R. 1-2 at 468.)

On this record, the issue of willfulness and malice has been established and cannot be revisited by another court. In rejecting the conditional privilege, the jury found that Michael – a doctor and a lawyer – had no legal justification to file the Memorandum with attached Agreement and, at a minimum, knew that injury was highly likely to result from the act. He testified that he knew that the property would not sell with the clouded title. Such findings are consistent with the application of issue preclusion in § 523(a)(6) proceedings arising out of slander of title and fraudulent instruments adjudications. *See In re Goldsberry*, 2011 WL 528958 (Bkrtcy. S.D. Ind. 2011) (unpublished); *In re Hetrick*, 379 B.R. 612, 621 (Bkrtcy. E.D. Va. 2007) (default judgment). They are also consistent with a judgment that included a statutory award of punitive damages.

Nevertheless, Michael asserts that the bankruptcy court failed to conduct second – prong of the preclusion analysis – the "equities-based, fundamental fairness analysis."

18

Because this court reviews the decision de novo, it may consider the record and arguments raised therein.

There is no dispute Michael could have, as a matter of law, sought leave to appeal the state court judgment or move for relief from judgment under Wis. Stat. § 806.07. He never sought leave to pursue an interlocutory appeal of the interlocutory judgment. Additionally, the burden of proof before the state court – preponderance of the evidence – is the same as required in this adversary proceeding. *Matter of Bero*, 110 F.3d 462, 465 (7th Cir. 1997) ("[T]o prove that a debt is nondischargeable, the creditor bears the burden of proof by a preponderance of the evidence."). Ultimately, there is no contextual shift in law or matters of public policy that would render the application of estoppel to be fundamentally unfair. Michael had a full and fair opportunity to litigate the issues that were decided in state court, notwithstanding his decision to proceed pro se.

Next, Michael maintains that the bankruptcy court failed to view the evidence in the light most favorable to the non-moving party. To this end, Michael contends that the facts were viewed in the light most favorable to Kevin and Margaret and that the $281,000 damage award applied to the breach of contract **and** slander of title claims. However, the state court granted Kevin and Margaret's post-verdict motion requesting a judgment for the full amount of the damages based on the damages available under Wis. Stat. § 706.13.

Finally, Michael asserts that he should have been given the opportunity to develop the factual record concerning his allegations of perjury by Kevin. He insists that he is not seeking to collaterally attack the judgment but submits that the state courts are not the proper venue to address the perjury claim because "there is no assurance the state courts

19

would entertain a motion for relief from the judgment based on the perjury claim." This too fails because Michael raised (or attempted to raise) this issue during the Ozaukee trial and in the post-verdict motions. Moreover, he cannot collaterally attack the interlocutory judgment of the Ozaukee County Circuit Court in this court. The perjury issue is a matter within the province of the state courts, and, as it stands, the interlocutory judgment is presumptively valid. Now, therefore,

    IT IS ORDERED that the decision of the bankruptcy court is affirmed.

    IT IS FURTHER ORDERED that the appeal is dismissed with prejudice.

    Dated at Milwaukee, Wisconsin, this 5th day of February, 2014.

                                                      BY THE COURT

                                                     /s/ C.N. Clevert, Jr.
                                                     C.N. CLEVERT, JR.
                                                     U.S. DISTRICT JUDGE